NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3251
_____

UNITED STATES OF AMERICA

v.

RAFAEL SANCHEZ,
a/k/a Rafael Sanchez Figuereo,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-14-cr-00148-001)
Honorable James M. Munley, U.S. District Judge
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 30, 2016

Before:  AMBRO, SMITH* and FISHER, *Circuit Judges*.

(Filed: October 12, 2016)
_____

OPINION**
_____

---

*Honorable D. Brooks Smith, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on October 1, 2016

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FISHER, *Circuit Judge*.

Defendant Rafael Sanchez pleaded guilty to conspiring to defraud the United States and aggravated identity theft for his role in a tax-fraud scheme. The District Court sentenced him to 94 months' imprisonment followed by 3 years' supervised release and ordered $694,237.09 in restitution. He appeals, alleging three procedural deficiencies that occurred during his sentencing. We will affirm the District Court's judgment.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts that are necessary to our analysis.

Sanchez is a citizen of the Dominican Republic who was lawfully residing in the United States. During all relevant proceedings in the District Court, an interpreter translated for Sanchez, who speaks Spanish.

From 2009 to 2014, Sanchez and others used a stolen IRS tax-preparer identification number and fake or stolen taxpayer information to prepare and file at least 128 fraudulent federal income tax returns, each claiming a multi-thousand dollar refund. The scam was profitable until the IRS exposed it: Sanchez and his coconspirators falsely recovered hundreds of thousands of dollars in tax refunds.

In March of 2015, a federal grand jury returned a 43-count second superseding indictment against Sanchez and his coconspirators.[1] Under a plea agreement with the government, Sanchez pleaded guilty before the District Court to count 1 (conspiracy to defraud the United States) and count 32 (aggravated identity theft).[2] In the plea agreement and during his change-of-plea hearing, Sanchez acknowledged he was responsible for a loss of "more than $400,000 but less than $1,000,000" and that full restitution was required.[3]

Following Sanchez's guilty pleas, the Probation Office prepared a Presentence Investigation Report and two addendums (the PIR). Based upon a total offense level of 26 and a criminal history category of I, the PIR calculated Sanchez's advisory Sentencing Guidelines range at 63 to 78 months' imprisonment at count 1, plus a mandatory consecutive 24 months' imprisonment at count 32. The PIR calculated Sanchez's mandatory restitution at $694,237.09—$181,615 from false tax returns filed directly through his business, plus $512,622.09 from those filed through coconspirators in New York. Finally, the PIR estimated Sanchez's net worth and total monthly cash flow at $0.00.

At sentencing, the District Court first addressed and rejected Sanchez's objections to the PIR that (1) a 3-level reduction for acceptance of responsibility applied and (2) a 4-

---

[1]  Joint Appendix (J.A.) 25–43.

[2]  J.A. 44–71; 18 U.S.C. §§ 286, 1028A(a)(1).

[3]  J.A. 52, 59–61, 96–100; 18 U.S.C. § 3663A(a)(1), (c)(1); United States Sentencing Guidelines Manual (U.S.S.G.) § 5E1.1(a)(1).

level leadership enhancement did not apply.[4]  After the parties agreed that the total offense level was 26, the District Court sentenced Sanchez to 94 months' imprisonment followed by 3 years' supervised release.[5]  The District Court heard briefly about Sanchez's financial condition from defense counsel, declined to impose a fine, and ordered $694,237.09 in interest-free restitution to the IRS, payable under different terms during imprisonment and after release.  As the hearing adjourned, Sanchez appeared to express confusion about the sentence imposed. Through the interpreter, Sanchez claimed he pleaded guilty with the understanding that "the maximum [he would get] was 24 months."[6]  The District Court advised Sanchez to talk with his counsel and take any action he deemed appropriate.  This timely appeal followed.

## II.[7]

Sanchez concedes, and our review of the record confirms, that he failed to preserve the issues he raises on appeal in the District Court.  Our review is, therefore, limited to plain error under Federal Rule of Criminal Procedure 52(b).[8]  Under that rule, Sanchez must establish that a clear or obvious error occurred that affected his substantial rights.  If he meets this test, we ask whether the error seriously affects the fairness,

---

[4]  J.A. 107–116, 122–23.

[5]  J.A. 117 (imposing 70 months' imprisonment at count 1, plus 24 months' imprisonment at count 32, to be served consecutively, for a total of 94 months).

[6]  J.A. 125.

[7]  The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[8]  *United States v. Flores-Mejia*, 759 F.3d 253, 258 (3d Cir. 2014) (en banc).

4

integrity, or public reputation of judicial proceedings.[9]  If it did, we have discretion to remedy it.[10]

III.

Sanchez argues that the District Court plainly erred by failing to (A) set forth or adopt a final Guidelines calculation on the record, (B) verify for the record that he and his attorney read and discussed the PIR, and (C) make specific factual findings about his ability to pay mandatory restitution.  Based upon these alleged plain errors, he asks us to vacate the District Court's judgment and remand for resentencing.

With respect to Sanchez's first two arguments, we agree that the District Court erred.  We conclude, however, that those errors did not "affect[] the outcome" of the proceedings, as required for relief under Rule 52(b).[11]  With respect to Sanchez's third argument, we find no error.  Accordingly, we will affirm.  We address Sanchez's arguments in turn.

A.

First, we agree with Sanchez that the District Court erred by imposing the sentence without first setting forth on the record its final Guidelines calculation or stating whether it adopted the PIR's calculation as its own.  District courts must first calculate a

---

[9]  *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted).
[10]  *Puckett v. United States*, 556 U.S. 129, 135 (2009).
[11]  *Id.* (internal quotation marks omitted).

defendant's Guidelines range.[12]  Here, the only discussion on the record of the final Guidelines calculation came from the parties.  After the District Court rejected Sanchez's PIR objections, counsel for the Government stated, "I just want to make clear where we are at the end of what Your Honor has found . . . . [W]e are at an offense level of 26?," after which Sanchez's counsel stated, "That's correct."[13]  The District Court did not accept, reject, or add to the parties' statements in any way.  It did not specifically recount, for example, that (1) the offense level of 26 applied only to count 1 and carried an imprisonment range of 63 to 78 months, (2) count 32 carried a separate mandatory consecutive 24-month imprisonment term, or (3) the Guidelines supervised-release ranges were 1 to 3 years at count 1 and 1 year at count 32.  Nor did the District Court indicate before imposing the sentence that it would adopt the PIR's Guidelines calculation as its own.  Because we find no adequate explanation for Sanchez "of how a Guidelines calculation . . . was reached" on this record, the District Court erred.[14]

This error, however, did not affect the outcome of the proceedings, as required for relief under Rule 52(b).  While no final Guidelines calculation was set forth explicitly or adopted on the record before the sentence was imposed, Sanchez does not claim, and we cannot discern from the record, that the District Court improperly computed and applied the Guidelines in rendering its sentence.  Sanchez's sentence of 70 months' imprisonment

---

[12] *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

[13] J.A. 117.

[14] *See United States v. Friedman*, 658 F.3d 342, 361 (3d Cir. 2011).

at count 1 was squarely in the middle of the Guidelines range of 63 to 78 months. His sentence of 24 months' imprisonment at count 32, running consecutively to the 70-month sentence imposed at count 1, was required by statute and under the Guidelines. Finally, his 3-year term of supervised release was within the Guidelines ranges for each count, and restitution was required by statute and under the Guidelines. Sanchez does not allege that the District Court's failure to recount the final Guidelines calculation for the record somehow hindered his ability to raise additional objections to the PIR's calculation or resulted in a substantively unreasonable sentence. Because this error did not affect the outcome of the District Court's proceedings, relief is not warranted on this ground under Rule 52(b).

B.

Second, we agree with Sanchez that the District Court erred by making no attempt to inquire specifically, or otherwise determine, that Sanchez read and talked about the PIR with his counsel. During sentencing, district courts must verify that the defendant and defense counsel had the opportunity to read and discuss the PIR and any addendum.[15] There is no absolute requirement that a district court personally ask the defendant for verification, but it must "somehow determine that the defendant has had this opportunity."[16] The District Court here did not abide by this standard. Sanchez was

---

[15] Fed. R. Crim. P. 32(i)(1)(A).
[16] *United States v. Stevens*, 223 F.3d 239, 241 (3d Cir. 2000); *see United States v. Mays*, 798 F.2d 78, 80 (3d Cir. 1986).

never explicitly asked if he read and talked about the PIR and its two addendums with counsel. The record, moreover, lacks any functional equivalent to such an explicit colloquy. Sanchez lodged two objections to the PIR's Guidelines calculation, and his counsel argued vaguely (and unsuccessfully) to remove factual statements in the PIR about an alleged arrest occurring before Sanchez came to the United States.[17] But these statements—made by the parties—do not absolve the District Court from its verification duty under Federal Rule of Criminal Procedure 32(i)(A)(1), especially where there is no indication that the PIR was translated into Spanish for Sanchez. This was error.

This error, however, did not affect the outcome of the District Court proceedings, as required for relief under Rule 52(b). Sanchez does not claim on appeal that he—in fact—did not read, understand, and talk about the PIR with his counsel, resulting in prejudice. He claims merely that the District Court failed to verify that he did so for the record, in violation of Rule 32(a)(1)(i). In *United States v. Stevens*, we rejected this argument under Rule 52(b), stating that

---

[17] J.A. 118. In its final judgment entered after the sentencing hearing, the District Court adopted the PIR without change.

8

> [n]either Stevens's original nor his reply brief asserts that either Stevens or his counsel did not receive and read the [PIR] or did not discuss it together; nor does Stevens therein raise any claim of prejudice or assert any inaccuracy in the [PIR]. Nor does anything in the record suggest otherwise. Stevens merely contends that the district court's error was "equivalent to a structural defect" in the sentencing process, affected his substantial rights *per se*, and therefore requires automatic *vacatur* and remand. We find this contention meritless.[18]

We find Sanchez's argument similarly baseless. Sanchez objected to the PIR's Guidelines calculation on two distinct grounds at sentencing and does not suggest here that the District Court's failure to verify that he reviewed the PIR impeded him from raising other objections. While Sanchez seemed to express confusion about his sentence's length as the hearing closed, that confusion appears to have stemmed from the plea negotiations and agreement, not the PIR. Through the interpreter, Sanchez stated, "My lawyers, they did a deal with the assistant DA, the maximum I will get was 24 months. So I plead guilty and the maximum will be 24 months. I sent the letter."[19] Sanchez made no mention of the PIR. This error, therefore, did not affect the outcome of the District Court proceedings, and relief is not warranted on this ground under Rule 52(b).

---

[18] 223 F.3d at 243; *accord United States v. Rangel-Arreola*, 991 F.2d 1519, 1526 n.5 (10th Cir. 1993) ("To remand when no prejudice exists [after a Rule 32(a)(1)(i) violation] is to require the district court to undergo an exercise in futility in order to obtain the same sentence.").

[19] J.A. 125.

C.

Finally, we disagree with Sanchez's third argument that the District Court erred by failing to make adequate factual findings about his ability to pay mandatory restitution. Where full restitution is ordered, the sentencing court must specify the manner and schedule of how it must be paid after considering the defendant's financial resources and other assets, projected earnings and other income, and any financial obligations, including those to dependents.[20] Where the record "evidences a [district] court's consideration of the defendant's financial situation—albeit without express findings—the[se] requirements . . . are satisfied."[21]

The District Court met this test. As explained above, the PIR detailed Sanchez's assets and liabilities and estimated his net worth and total monthly cash flow at $0.00. Before imposition of the sentence, however, this exchange occurred during the hearing:

> Defense counsel: Judge, [Sanchez] tells me he has some money that's set aside that is not, you know, proceeds or anything involving this scheme that he does intend to put towards restitution, and he does intend on making restitution in full . . . .
>
> The Court: Thank you very much, Mr. Sanchez . . . .[22]

Defense counsel also noted for the record that Sanchez has two dependent children, (then) ages 9 and 17.[23] Thereafter, the District Court noted for the record, twice, that the

---

[20] 18 U.S.C. § 3664(f)(2); *United States v. Lessner*, 498 F.3d 185, 201 (3d Cir. 2007).

[21] *Lessner*, 498 F.3d at 201.

[22] J.A. 120.

10

loss attributable to Sanchez "exceeds $400,000."[24] Finally, the District Court set forth a detailed restitution-payment plan for Sanchez, waiving interest:

> During imprisonment, restitution is payable [to the IRS] every three months in an amount, after telephone allowance, equal to 50 percent of the funds deposited in [Sanchez's] inmate trust fund account.

> In the event the restitution is not paid in full prior to commencement of supervised release, [Sanchez] shall, as a condition of supervised release, satisfy the amount due in monthly installments of not less than $100 to commence 30 days after release from confinement.[25]

Based upon the foregoing, we are satisfied that the District Court adequately considered Sanchez's financial situation—"albeit without express findings"—in imposing mandatory restitution.[26] We find no error here. Relief is not warranted on this ground under Rule 52(b).

## IV.

For the reasons set forth above, we will affirm the District Court's judgment.

---

[23] J.A. 118.
[24] J.A. 121–22.
[25] J.A. 123.
[26] *Lessner*, 498 F.3d at 201.

11